UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRODUCTION RESOURCE GROUP, L.L.C.

                        Plaintiff,

        -v-                                            Case No. 08-CV-6333 (KMK)

MARTIN PROFESSIONAL, A/S and MARTIN            OPINION AND ORDER
PROFESSIONAL, INC.,

                        Defendants.

Appearances:

James David Veltrop, Esq.
Jeremy Chad Lowe, Esq.
Axinn, Veltrop & Harkrider LLP
Hartford, Connecticut
*Counsel for Plaintiff*

James Patrick Doyle, Esq.
Axinn, Veltrop & Harkrider LLP
New York, New York
*Counsel for Plaintiff*

Douglas R. Nemec, Esq.
Marti Johnson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff brings this case alleging patent infringement.  Defendants move to dismiss on

the grounds that the Court lacks jurisdiction due to a binding forum selection clause.  For the

reasons given herein, Defendants' Motion to Dismiss is granted.

<u>I. Background</u>

<u>A. Factual Background</u>

    <u>1. The Parties</u>

Plaintiff Production Resource Group, L.L.C. ("Plaintiff" or "PRG") is a Delaware limited liability company that designs, manufactures, and sells "sophisticated lighting fixtures, controllers and associated products for use in entertainment and display environments." (Compl. & Jury Demand ("Compl.") ¶ 1.) Defendants Martin Professional, A/S and its wholly-owned subsidiary, Martin Professional, Inc. (collectively "Defendants" or "Martin"), are corporations from Denmark and Florida, respectively. (*Id.* ¶¶ 2-3.)

    <u>2. The Contractual Relationship of the Parties</u>

PRG and Martin entered into two agreements (collectively, the "Agreements") effective on or about November 1, 2003 – a License Agreement and an Agreement for the Provision of Consultancy Services ("Consultancy Agreement"). (Mem. of Law in Supp. of Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction ("Defs.' Mem.") 2; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") 2; Decl. of Douglas R. Nemec dated July 22, 2009 ("Nemec Decl.") Exs. A & B.) Both Agreements contain choice of law, choice of forum, and dispute resolution provisions. (Nemec Decl. Ex. A ("License Agreement") ¶¶ 24-25, Ex. B ("Consultancy Agreement") §§ 13.8-13.9.) The Agreements established that: (1) the Agreements "together constitute the entire agreement between the Parties" (License Agreement ¶ 21), and (2) "[t]o the extent that any clause in [the Consultancy Agreement] is in conflict with any clause in the concurrently-executed License Agreement, [the Consultancy Agreement] will control," (Consultancy Agreement § 13.7).

On November 9, 2005, Martin notified Plaintiff that it believed that, pursuant to the Agreements, as of November 1, 2005, Martin was no longer obligated to pay a monthly fee outlined in the Consultancy Agreement.[1]  (Decl. of Jeremy C. Lowe in Supp. of Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Lowe Decl.") Ex. D.)  Plaintiff responded on November 17, 2005, and stated that if Martin ceased making monthly payments, it would be entitled to a royalty payment under the License Agreement, and that failure to make royalty payments would "constitute[] a material breach of the License Agreement."[2]  (*Id.* Ex. E.)  On December 19, 2005, Plaintiff "exercise[d] its right to cancel the Consultancy Agreement between PRG and Martin" on the basis of Martin's failure to pay a monthly fee for November 2005.  (*Id.* Ex. F.)  Plaintiff again noted that it believed it was then entitled to royalty payments under the License Agreement, and that Martin should "consider this a notice of deficiency in those royalty payments."  (*Id.*)  Finally, Plaintiff noted that "[p]ursuant to section 10(d) of the License Agreement, Martin ha[d] 30 days from the date of this letter to cure those royalty deficiencies, including a full accounting of same from November 1, 2003, before PRG has the right to cancel the License Agreement."  (*Id.*)  On January 6, 2006, Martin notified Plaintiff that its position was that "the Consultancy Agreement has not been terminated," and that "no [r]oyalties [were] yet due."  (*Id.* Ex. I.)  On February 16, 2006, Plaintiff "terminate[d] the License Agreement effective immediately" for the reasons outlined on December 19, 2005.  (*Id.* Ex. J.)  On April 26, 2006, Martin notified Plaintiff "that Martin will cease to make the monthly

---

[1]  The Consultancy Agreement provided for a monthly fee payable to Plaintiff by Martin for two years from the effective start date of the Agreements.  (Consultancy Agreement § 5.)

[2]  The License Agreement provided for a "Royalty-Free Period" that terminated if Martin ceased paying the monthly fee established by "section 5 of the Consultancy Agreement," and for the payment of royalties, under certain circumstances, at the conclusion of the Royalty-Free Period.  (License Agreement ¶ 3(b)(i)-(ii).)

payments under the Consultancy Agreement effective from 1 March 2006," and that, pursuant to

paragraph 3(b) of the License Agreement, any payments due from Martin to Plaintiff would be

governed by the License Agreement. (*Id.* Ex. K.) According to Martin, "[f]or the two years

following this, the [P]arties maintained a sporadic but ongoing discussion as to whether and to

what extent Martin owed royalties to PRG." (Defs.' Mem. 3.) On July 15, 2008, Plaintiff

reasserted its position that it terminated the License Agreement on February 16, 2006, and

asserted that the License Agreement was "also terminated as of the date of this letter" due to

Martin's alleged failure to pay royalties. (Lowe Decl. Ex. L.)

### 3. The Forum Selection, Dispute Resolution, and Other Relevant Provisions

The heart of this Motion is the extent to which the Agreements might require Plaintiff to

bring this action in a court in England or Wales. In this regard, the most pertinent contractual

provisions from the License Agreement not quoted above are:

24. Choice of Laws

This Agreement shall be governed by and construed and interpreted in accordance
with the laws of England and Wales and the Parties hereby submit to the
exclusive jurisdiction of the Courts of England and Wales.

25. Dispute Resolution

In the event of a dispute arising out of or relating to this Agreement, including
any question regarding its existence, validity or termination, the Parties shall first
seek settlement of that dispute in accordance with the LCIA Mediation procedure
. . . or pursuant to some method as they may mutually agree. If the dispute is not
settled by mediation . . . the dispute shall be referred to and finally resolved in
accordance with section 24.

(License Agreement ¶¶ 24-25.) Beyond these provisions, Plaintiff notes that the License

Agreement also requires that the "scope" of any claims of any of the "Licensed Patents" shall be

determined "under the laws of the competent jurisdiction that issued the Licensed Patent."  (*Id.* ¶ 1(k).)

The Consultancy Agreement contains the following corresponding provisions regarding dispute resolution, choice of law, and forum selection:

> 13.8  This Agreement is governed by and shall be construed in accordance with the law of England and Wales.  The parties agree to submit to the exclusive jurisdiction of the Courts of England and Wales save as to enforcement where their jurisdiction shall be non-exclusive.

> 13.9  In the event of a dispute arising out of or relating to this Agreement, including any question regarding its existence, validity or termination, the parties shall first seek settlement of that dispute by mediation in accordance with the LCIA Mediation Procedure, . . . or pursuant to such other method as they may mutually agree.  If the dispute is not settled by mediation . . . the dispute shall be referred to and finally resolved in accordance with clause 13.8.

(Consultancy Agreement §§ 13.8-13.9.)[3]  The Consultancy Agreement also contains a provision that for "the term of the Licensing Agreement," PRG agreed "not to sue Martin or any of its Associated Companies . . . for infringement or misappropriation of the Technology in respect of Licensed Products (as defined in the License Agreement) anywhere in the world."  (*Id.* § 2.5.) Martin made a similar commitment, promising not to sue PRG "for infringement or misappropriation of any patent or utility model rights of Martin or any of its Associated Companies in respect of any products manufactured by [PRG] . . . ."  (*Id.*)  Under this provision, the covenants not to bring these infringement actions terminated automatically upon termination of the License Agreement.  (*Id.*)

---

[3]  In fact, the Court notes that the Parties attempted mediation without success, through the Court's mediation program.  (Pl.'s Mem. 5 n.1.)  Plaintiff admitted at oral argument that Defendant had a right to mediation of this dispute pursuant to section 13.9 of the Consultancy Agreement (and paragraph 25 of the License Agreement).  (Oral Arg. Tr. 27: 5-23, Mar. 26, 2012.)

Plaintiff brought this action on July 15, 2008, alleging infringement of twenty separate patents that it alleges it owns. (Compl. ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59, 64, 69, 74, 79, 84, 89, 94, 99, 104.) For each count, Plaintiff alleges that Martin has made, used, imported, offered for sale, or sold products covered by these patents within the United States. (*Id.* ¶¶ 10, 15, 20, 25, 30, 35, 40, 45, 50, 55, 60, 65, 70, 75, 80, 85, 90, 95, 100, 105.) The Complaint does not allege a start date from which Plaintiff alleges patent infringement, but Plaintiff seeks remedies that derive solely from federal patent law. (*Id.* ¶¶ A-I.)[4] Moreover, in its motion papers, Plaintiff clarified that it is only seeking damages for "Martin's post-termination infringement." (Pl.'s Mem. 9.) Martin answered on November 6, 2008. (Dkt. No. 13.) The Court granted the Parties' joint motion for a stipulated protective order regarding procedures for handling confidential information on November 18, 2009. (Dkt. No. 22.) The Court held oral argument on March 26, 2012.

## II. Discussion

### A. Standard of Review

#### 1. Procedural Mechanism of Evaluating a Forum Selection Clause

Martin has styled its motion as one challenging the Court's jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). As Martin has answered, Martin's Motion is made pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"). "Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion." *Xu v. City of New York*, No. 08-CV-11339, 2010 WL 3060815, at *2 n. 2 (S.D.N.Y.

---

[4] Plaintiff does not seek breach of contract damages. For example, Plaintiff is not seeking royalty payments under the License Agreement.

Aug. 3, 2010); *see also S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 220 (S.D.N.Y. 2009) ("The standards to be applied to a motion for judgment on the pleadings pursuant to Rule 12(c) are the same as those applied to a motion to dismiss pursuant to Rule 12(b).").

Neither the Supreme Court nor the Second Circuit has established a single procedural mechanism for resolving enforcement of a forum selection clause. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006) ("The Supreme Court has not specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." (internal quotation marks omitted)); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ("[T]here is no existing mechanism with which forum selection enforcement is a perfect fit."). Still, the consensus it that "[t]he proper vehicle is a motion to dismiss the complaint for either (1) lack of subject matter jurisdiction pursuant to [Rule] 12(b)(1); (2) improper venue pursuant to Rule 12(b)(3); or (3) failure to state a claim pursuant to Rule 12(b)(6)." *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) (internal citations omitted); *see also TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (noting that the Second Circuit has affirmed judgments enforcing forum selection clauses by dismissing cases for lack of jurisdiction, for improper venue, and for failure to state a claim); *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 326-27 (S.D.N.Y. 2008) (noting both the split in authority and the three available means for bringing the motion). Because, as noted, Martin styles the Motion as brought pursuant to Rule 12(b)(1) (Defs.' Mem. 1), and Plaintiff objects only on the basis that absent a forum selection clause, the Court would have subject matter jurisdiction (Pl.'s Mem. 7 n.5), the Court will treat the Motion as such. *See TradeComet.com*, 647 F.3d at 473 (noting that a "defendant may seek enforcement of a forum selection clause through a Rule 12(b) motion to

dismiss"); *Cfirstclass*, 560 F. Supp. 2d at 327 (noting that it was appropriate to use Rule 12(b)(1) to determine applicability of forum selection clause when the plaintiff did not object).

On a motion to dismiss pursuant to Rule 12(b)(1), a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd* 130 S. Ct. 2869 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,'" *Morrison*, 547 F.3d at 170 (quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted)), but "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" *id.* (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). In deciding the motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

These standards are not altered by the fact that the Motion at issue is premised on a forum selection clause. *See New Moon Shipping*, 121 F.3d at 29 (noting that the burden on a party seeking to bring a suit in a forum other than that designated by the forum selection clause "is analogous to that imposed on a plaintiff to prove that the federal court has subject matter

jurisdiction over his suit or personal jurisdiction over the defendant"); *TradeComet.com*, 693 F. Supp. 2d at 375, n.3 (noting that in deciding a motion to dismiss based on a forum selection clause, under Rule 12(b)(1) or 12)(b)(3), a court may consider evidence outside the pleadings). Thus, "at the initial stage of litigation, a party seeking to establish jurisdiction need only make a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction." *New Moon Shipping*, 121 F.3d at 29 (emphasis in original) (noting also that no disputed fact should be found against a party seeking to avoid enforcement of a forum selection clause unless a hearing is held).

## 2. Enforceability of Forum Selection Clauses

Parties may consent to personal jurisdiction through forum-selection clauses in contracts. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."). Indeed, "[t]he Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use." *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557, 2009 WL 2029796, at *14 (E.D.N.Y. June 10, 2009); *see also Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212, 2008 WL 905044, at *5 (E.D.N.Y. Mar. 31, 2008) ("The Second Circuit has consistently held that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses."). "Underlying this policy is an understanding that forum selection clauses carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract. As such, these clauses are bargained for terms of the contract that deserve to be honored by courts." *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-CV-5262, 2004 WL 421793, at *3 (S.D.N.Y. Mar. 5, 2004); *see also Aguas Lenders Recovery Grp. LLC v.*

*Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (noting that forum selection and choice of law clauses eliminate "uncertainty in international commerce"). Accordingly, mandatory forum selection clauses are entitled to a "presumption of enforceability, unless 'enforcement would be unreasonable and unjust, or . . . the clause was invalid for such reasons as fraud or overreaching.'" *Aguas Lenders*, 585 F.3d at 700 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A party seeking to avoid enforcement of a forum selection clause "bear[s] the heavy burden of making a 'strong showing' in order to overcome the presumption of validity. . . . " *Eslworldwide.com, Inc. v. Interland, Inc.*, No. 06-CV-2503, 2006 WL 1716881, at *2 (S.D.N.Y. June 21, 2006).

"Th[e Second Circuit] has explained that '[d]etermining whether to dismiss a claim based on a forum selection clause involves a four-part analysis' . . . ." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). Under this analysis, the Court must: (1) determine whether the clause at issue was reasonably communicated to the party resisting enforcement; (2) determine whether the clause is mandatory or permissive; (3) determine whether the clause covers the claims and parties involved in this action; and (4) as satisfaction of the first three steps creates a presumption of enforceability, the Court must determine whether the resisting party has rebutted the presumption by demonstrating "that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 708, 711 (internal quotation marks omitted); *see also Phillips*, 494 F.3d at 383-84 (outlining the test to be applied); *TradeComet.com*, 693 F. Supp. 2d at 376 (same); *Cfirstclass Corp.*, 560 F. Supp. 2d at 327-28 (same).

### 3. Governing Law

The Parties present three related arguments.  First, Plaintiff argues that the forum selection (and/or choice of law) clauses are irrelevant because the applicable contracts were terminated, and Plaintiff is suing only for post-termination damages.  (Pl.'s Mem. 7.)  Martin argues that the Agreements were not terminated, and that whether they were is a question that is, itself, subject to the forum selection (and choice of law) clauses.  (Defs.' Mem. 8; Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss for Lack of Subject Matter Juris. ("Reply Mem.") 1.)  Second, Plaintiff argues that if the Agreements do govern this action, then the Consultancy Agreement language governs, and is permissive, rather than mandatory.  (Pl.'s Mem. 13.)  Martin argues that the License Agreement governs, and that neither of the Agreements permit this suit.  (Defs.' Mem. 10; Reply Mem. 8.)  Third, Plaintiff argues that even if the License Agreement governs, the forum selection and choice of law clauses do not govern the claims asserted in this action, and that enforcement of the clauses would be unreasonable.  (Pl.'s Mem. 10, 15.)  Martin argues that the clauses do cover this action, and that enforcement of the clauses would not be unreasonable.  (Defs.' Mem. 6, 11; Reply Mem. 8.)  Thus, no matter which question the Court starts with, it is confronted by issues of contractual interpretation that are, at least arguably, subject to the very choice of law and forum selection provisions at issue.

Fortunately, courts have confronted this kind of Gordian knot before.  The Second Circuit has held that federal law governs the first and fourth steps of forum selection clause analysis regardless of the existence of a choice of law provision.  *See Phillips*, 494 F.3d at 384 ("Despite the presumptive validity of choice of law clauses, our precedent indicates that federal law should be used to determine whether an otherwise mandatory and applicable forum selection clause is enforceable under . . . step four in our analysis."); *accord TradeComet.com*, 693 F.

Supp. 2d at 377 ("[T]he first and fourth steps of the analysis – whether the clause was communicated to the non-moving party and whether enforcement would be reasonable – are procedural in nature and should be analyzed under federal law."); *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09-CV-7268, 2009 WL 4907060, at *2 (S.D.N.Y. Dec. 21, 2009) (same). However, the Second Circuit has found "less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause, as required by parts two and three of our analysis." *Phillips*, 494 F.3d at 385. Indeed, in *Phillips*, the Second Circuit indicated sympathy with the Tenth Circuit, which held that "'under federal law the courts should ordinarily honor an international commercial agreement's forum selection clause *as construed under the law specified in the agreement's choice of law provision*." *Id.* (quoting *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428-30 (10th Cir. 2006)) (emphasis in *Phillips*). Nonetheless, as there was no briefing on the issue by the parties in that case, and because "the parties neither objected to the district court's citation to federal precedent in its interpretation of the clause . . ., nor construed the clause under English law in their briefs," the *Phillips* court "assume[d] . . . that [the parties] d[id] not rely on any distinctive features of English law and appl[ied] general contract law principles and federal precedent to discern the meaning and scope of the forum clause." *Id.* at 386.

In this case, no Party cites to or references any decision or principle of English or Welsh contract law. In fact, the Parties rely heavily on federal law. The only reference to English or Welsh law in the motion papers is a citation to a single opinion for the proposition that English courts may accept jurisdiction over questions of United States patent law pursuant to a forum selection clause. (Reply Mem. 9.) Moreover, Martin – i.e. the movant – explicitly argues that this Court can rely on "general contract principles and federal precedent" (Defs.' Mem. 5 n. 1

(internal quotation marks omitted)), and Plaintiff does not whisper an objection.  Therefore, it is appropriate to assume that the Parties do not rely on any distinctive feature of English or Welsh law, and acquiesce to application of federal common law.  *See Phillips* 494 F.3d at 386 (applying federal law because the parties did not rely on English law); *accord John Wyeth & Bro., Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (applying general contract law principles to interpret forum selection clause where the parties barely referenced English law); *Bluefire Wireless*, 2009 WL 4907060, at *2 (applying federal common law because the parties did not rely on, or cite to, English law); *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580, 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (applying federal law because, although one party submitted a declaration as to the effect of foreign law, the declaration was "conclusory" and cited only two cases, and "all parties cite[d] extensively to federal law in their briefs"); *Flemming, Zulack, Williamson, Zauderer, LLP v. Morrow*, No. 07-CV-269, 2008 WL 2227571, at *3 (D. Vt. May 29, 2008) (applying federal law because no party "construed the clause under New York State law or highlighted any specific facets of New York State law that would apply").  *But cf. TradeComet.com*, 693 F. Supp. 2d at 376-77 (noting that the issue is unsettled and declining to decide the question of which law to apply, because the parties relied on both forum and contractually chosen law, and because the outcome was the same under both laws); *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 611-12 (S.D.N.Y. 2008) (applying New York law when the parties disagreed as to which law was applicable).

B. Application of *Phillips*

    1.  Whether Notice Of The Forum Selection Clause Was Provided

With the question of the governing law resolved, the Court now turns to the four-prong analysis described in *Phillips*.  To begin, there is no dispute concerning the first prong of the

*Phillips* test – notice – and so the Court starts its analysis with the second prong. *See S.K.I. Beer*, 612 F.3d at 708-09 (finding the first step of the *Phillips* test met when "[n]othing in the record indicate[d]," and no party argued, that the forum selection clause was "not reasonably communicated" to the party resisting its enforcement).

2.  Whether The Forum Selection Clause Is Mandatory

The second prong requires an answer to the question of whether the forum selection clause at issue is permissive or mandatory, "i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Phillips*, 494 F.3d at 383 (emphasis in original); *see also John Boutari & Son, Wines and Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (noting distinction between mandatory and permissive forum selection clauses). A permissive forum selection clause "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction is otherwise appropriate." *Phillips*, 494 F.3d at 386; *see also Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (same). On the other hand, "[a] forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386; *see also Global Seafood*, 659 F.3d at 225 (same); *S.K.I. Beer*, 612 F.3d at 708 (same). While forum selection clauses that use terms such as "shall" or "exclusive" may be viewed as making those clauses mandatory, there is no exact formula or linguistic requirement. *See Wells Fargo Century, Inc. v. Brown*, 475 F. Supp. 2d 368, 372 (S.D.N.Y. 2007) (noting that use of "shall" and "exclusive" are not dispositive). The more critical question is whether the clause at issue identifies a particular jurisdiction to the exclusion of all others. *See id.*; *see also John Boutari*, 22 F.3d at 52.

Here, even in the best case scenario for Plaintiff, which can be found in the Consultancy Agreement, the forum selection clause is only permissive with respect to "enforcement." Breaking it down, the License Agreement explicitly provides that it is to be "governed by and construed and interpreted in accordance with the laws of England and Wales and the Parties hereby submit to the *exclusive jurisdiction* of the Courts of England and Wales." (License Agreement ¶ 24 (emphasis added).) This is precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory. *See, e.g., Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011) ("Here, the forum selection clauses in both the sublicense agreements and the Master License Agreement are mandatory because they provide that '[a]ny disagreements between [the parties] *shall* be resolved *exclusively* in the Sovereign State of Vatican City.'" (emphasis in *Magi XXI*)); *KTV Media Int'l, Inc. v. Galaxy Group, LA LLC*, 812 F. Supp. 2d 377, 384-85 (S.D.N.Y. 2011) (finding mandatory a forum selection clause that provides that the contract parties "consent[]" to the "exclusive jurisdiction" of California courts); *Cent. National-Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F. Supp. 2d 675, 678 (S.D.N.Y. 2002) (finding forum selection clause providing that "[a]ny disputes" were "to be decided in London according to English law" to be mandatory); *Brennen v. Phyto–Riker Pharms., Ltd.*, No. 01–CV–11815, 2002 WL 1349742, at *3 (S.D.N.Y. June 20, 2002) (noting that "inclusion of the phrase 'exclusive jurisdiction' indicates an intent that any dispute . . . be filed in one of the fora specified").

It is true that the Consultancy Agreement limits the exclusivity of the forum selection, by providing that the Parties submit to the "exclusive jurisdiction of the Courts of England and Wales *save as to enforcement where their jurisdiction shall be non-exclusive.*" (Consultancy Agreement § 13.8 (emphasis added).) Focusing on this language, Plaintiff argues that the forum

selection clause is permissive here because Plaintiff is seeking to "enforce its termination of the Agreements." (Pl.'s Mem. 13.) Though the Court does not offer an opinion as to what "enforcement" of the agreements (let alone enforcement of the termination of the agreements) might be when differentiated from any normal contract dispute, "enforcement" clearly is not this patent suit that requests no contractual remedies, and that purportedly seeks remedies for actions that supposedly occurred, at least in part, after the alleged termination of the Agreements. Indeed, the heart of Plaintiff's argument is that this action does not arise from the Agreements, and is not an attempt to enforce them. (*Id.* at 1 ("This is a patent enforcement action . . . ."); *id.* ("PRG does not need to assert any rights under any contract in order to enforce its patents against Martin."); *id.* at 9 (seeking relief for "post-termination infringement"); *id.* at 10 (distinguishing between an action "to enforce its termination . . . by showing pre-termination infringement" and this action for "post-termination infringement"); *id.* ("PRG asserts no rights under the terminated contract.").) Therefore, regardless of which Agreement is applicable, the forum selection clause is mandatory.

### 3. Whether The Forum Selection Clause Covers This Action

Plaintiff offers two arguments to demonstrate that the claims in this suit are not covered by the forum selection clause: (1) the Agreements were terminated and, hence, the forum selection clause in each is no longer applicable (Pl.'s Mem. 7); and (2) even if the forum selection clause is applicable, it does not cover the dispute involving Plaintiff's claim regarding post-termination patent infringement, (*id.* at 10).

Regarding the first point, the Court need not decide whether the Agreements have been terminated (Defendant disputes Plaintiff on this point). The License Agreement contains a survival clause (License Agreement ¶ 16(e) (providing for survival of, inter alia, the forum

selection and dispute resolution provisions)), and such clauses are presumptively enforceable. *See Future Indus. of Am., Inc. v. Advanced UV Light GMBH*, No. 09-CV-966, 2010 WL 7865077, at *3 (D. Conn. Sept. 1, 2010) (concluding that forum selection clause applies where the contract contained provision that claims pertaining to the contract survived termination); *Weingard v. Telepathy, Inc.*, No. 05-CV-2024, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) (noting that "the forum selection clause is valid and still applicable" to disputes arising from a contract which "state[d] that the forum selection clause survives termination or expiration of the agreement"). Thus, the only situation in which the termination of the Agreements might allow Plaintiff to escape the forum selection clauses is one in which *only* the Consultancy Agreement's provisions were applicable, and the Consultancy Agreement had been terminated. To determine whether only the Consultancy Agreement's provisions applied, however, the Court would have to determine whether the License Agreement's provisions applied, and the two Agreements have many materially identical clauses. Moreover, there is nothing in the Consultancy Agreement that explicitly neuters the forum selection clause upon termination of that agreement. *See AGR Fin., LLC v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000) (concluding, based on the connection of plaintiff's claims to the underlying contract, that "even if the Agreement was terminated, its forum selection clause would still be effective"). The Court, therefore, turns to Plaintiff's second argument.

When determining the scope of a forum selection clause, the Court "examine[s] the substance of th[e] claims, shorn of their labels," and relates the substance of the claims "to the precise language of the clause," "discount[ing] the precedential weight of cases that deal with dissimilarly worded clauses." *Phillips*, 494 F.3d at 388-90; *see also MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 305 (D. Conn. 2009) ("[T]he court must look to the specific

language of the forum-selection clause . . . ."); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) ("[W]hen ascertaining the applicability of a contractual provision to particular claims, courts must examine the substance of those claims, shorn of their labels." (internal quotation marks and brackets omitted)). Embracing this principle, Plaintiff argues that the forum selection clause in each Agreement is inapplicable, because Plaintiff is asserting no rights under the Agreements, but rather is merely seeking to enforce its patent rights.

Courts have identified at least two categories of terms describing the scope of a forum selection clause. The narrower category includes terms such as "arise out of," "arise from," or "arising under," whereas the broader category includes terms such as "in connection with," "relating to," or "associated with." *See Phillips*, 494 F.3d at 389 (discussing the two categories); *TradeComet.com*, 693 F. Supp. 2d at 378-79 (same); *MAK Marketing*, 620 F. Supp. 2d at 305 (same); *Diesel Props*, 2008 WL 4833001, at *7-8 (same). Each forum selection clause in this case applies to "[t]his Agreement," which is equivalent to the former category of terms. *See Phillips*, 494 F.3d at 389 (defining "arise out of" as "to originate from a specified source" (internal quotation marks omitted)); *TradeComet.com*, 693 F. Supp. 2d at 378 (noting that the former category encompasses claims that "originate from" the contract at issue); *MAK Marketing*, 620 F. Supp. 2d at 305 (noting that the former category requires a "causal connection" between the contract and the claims pursued); *Diesel Props*, 2008 WL 4833001, at *7 (invoking the same definition as *Phillips*). Where "the [] contract is only relevant as a defense," and the plaintiff has "asserted no rights or duties under that contract," the claims are not covered by this narrower category of forum selection clauses. *Phillips*, 494 F.3d at 391. In this case, Plaintiff likely will seek first to demonstrate patent infringement without any reference to the contract whatsoever. If successful, Defendants could assert as a defense that their actions

18

were permitted by the Agreements (which Defendants likely will argue were not terminated).[5] At that point, Plaintiff would, in all likelihood, argue that the Agreements do not constitute a defense as they were terminated or otherwise inapplicable. In circumstances like this, a forum selection clause using the narrow language does not apply. *See id.* at 391-92 ("[T]he proceedings may begin in court without any reference to the contract. The only nexus between the proceedings and the contract arises when the defendants raise their defenses. Given this sequence of events, one cannot say that the origins of the proceedings were in the [] contract.").

Thus, the question is the extent to which the forum selection clause in each Agreement is limited to disputes "arising out of" the underlying Agreement, or whether it also covers disputes more broadly "relating to" each Agreement. When interpreting contracts, it is accepted that separate agreements executed contemporaneously and that are part of a single transaction are to be read together. *See This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) (applying New York law); *see also Kelso Enters. Ltd. v. A.P. Moller–Maersk A/S*, 375 F. App'x 48, 49 (2d Cir. 2010) (summary order) ("[W]hen interpreting a contract or multiple contracts in a transaction, we strive to give effect to all of the terms of the relevant documents, reading them together"); *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) ("[I]t is both good sense and good law that these closely integrated and nearly contemporaneous documents be construed together." (internal quotation marks omitted)); *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106, 110 (N.Y. 1941) (holding that agreements at issue "were executed at substantially the same time, related to the same subject-matter, were contemporaneous writings and must be read together as

---

[5]  The existence of a license to use the patents is an affirmative defense to patent infringement. *See Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. 09-CV-212, 2010 WL 174078, at *3 (D. Conn. Jan. 14, 2010) (noting that defendant "assert[ed] as an affirmative defense a license to practice the [] [p]atent under [a] [l]icense [a]greement").

one"); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("Under general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together.").  It also is accepted that a contract "should be read to give effect to all its provisions and to render them consistent with each other."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U .S. 52, 63 (1995); *see also Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 433 (S.D.N.Y. 2012) ("It is black-letter law[] in . . . New York . . . that courts are to construe contract terms so as, where possible, to give rational meaning to all provisions in the document.").

These principles are highly relevant here for while it may be that standing alone the forum selection clause in each Agreement might limit the jurisdiction of English and Welsh courts to disputes "arising out of" the Agreements, these provisions must be interpreted "in the context of the entire contractual arrangement," including the dispute resolution provisions in each Agreement.  *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 395 (5th Cir. 2002) (holding that a forum selection clause in one agreement had to be read in the context of an arbitration clause in another contemporaneously executed agreement).  Reading the forum selection and dispute resolution clauses together, it is clear that the Agreements expressly provide for a sequence of resolution of a broad category of disputes.  Under the dispute resolution clause in each Agreement, in "the event of a dispute arising out of *or relating to [the] Agreement*" the Parties are first to "seek settlement of that dispute by mediation."  (License Agreement ¶ 25; Consultancy Agreement § 13.9 (emphasis added).)  If mediation is unsuccessful, then *that* dispute "shall be referred to and finally resolved in accordance with [the forum selection clause.]"  (*Id*.)  This means that the Agreements provide that any unresolved

dispute which arises out of or relates to the Agreements is to be resolved pursuant to the forum selection clause, which itself provides for the exclusive jurisdiction of the Courts of England and Wales (or, under the Consultancy Agreement, for the exclusive jurisdiction of those courts for every dispute except enforcement of the Agreement). *Cf. Holck v. Bank of N.Y. Mellon Corp.*, 769 F. Supp. 2d 1240, 1245-47 (D. Haw. 2011) (applying choice of law and dispute resolution provisions, the latter of which provided that any dispute unresolved by mediation be "adjudicated in a court of competent jurisdiction sitting in the State whose law governs the terms of this Agreement").[6]

The question then is whether Plaintiff's patent claims relate to the Agreements. On this point, the case law provides an answer. The term "related to" is "not necessarily tied to the concept of a causal connection." *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001); *accord Phillips*, 494 F.3d at 389 (applying the *Coregis* court's interpretation of "relate to" to forum selection clauses). Instead, "[c]ourts have . . . described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with', and synonymous with the phrases 'with respect to' and 'with reference to.'" *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. 09-CV-212, 2010 WL 174078, at *11 (D. Conn. Jan. 14, 2010) (omitting internal citations); *see also John Wyeth*, 119 F.3d at 1074 (noting that the phrase "arising in relation to" is "simple"); *Diesel Props*, 2008 WL 4833001, at *8 (noting that "the meaning of 'related to' is 'extremely broad.'") (omitting internal quotation). Thus, "the ordinary meaning of

---

[6] The Court recognizes that the License Agreement provides that the scope of a patent claim would be determined "under the laws of the competent jurisdiction that issued the" patent. (License Agreement ¶ 1(l).) At most, this provision represents an agreed-to exception to the choice of law provision of the Agreement, but does nothing to change the fact that the Agreement requires that any dispute "arising out of" or "relating to" the Agreement that is unresolved via mediation is to be resolved "in accordance with" the forum selection clause.

the term 'related to' . . . is broader than the term 'arising out of.'" *Coregis Insurance*, 241 F.3d at 128; *see also Phillips*, 494 F.3d at 389 (noting that the phrase "arise out of" does not encompass all claims that have some "possible relationship" with the contract, "including claims that may only 'relate to' . . . the contract").

Given the broad definition of the phrase "relating to," the Court concludes that Plaintiff's patent claims relate to the License and Consultancy Agreements. While it may be that Plaintiff does not base its patent claims on the Agreements, that is, they do not arise from the Agreements, there is little doubt that the patent claims relate to the very agreements that governed Defendants' use of Plaintiff's patents. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.,* 651 F.3d 1355, 1359 (Fed. Cir. 2011) (holding that patent action "related to" licensing agreement thus triggering forum selection clause); *Texas Instruments Inc. v. Tessara, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000) (noting that forum selection clause covering disputes "in connection with" a licensing agreement governed patent action); *Boehringer*, 2010 WL 174078, at *12 (holding that the dispute over plaintiff's patents "is related to and arises in connection with the . . . License Agreement"); *MAK Marketing*, 620 F. Supp. 2d at 306 (holding that copyright infringement claim was governed by forum selection clause which covered disputes "in connection with" the license agreement); *Cuno, Inc. v. Hayward Indus. Prods, Inc.*, No. 03-CV-3076, 2005 WL 1123877, at *5 (S.D.N.Y. May 10, 2005) (holding that forum selection clause covering disputes "related to" the contract covered plaintiff's patent infringement claims). As noted, Defendant might invoke the Agreements as a defense to Plaintiff's patent infringement allegations, thereby making the "dispute" one that is "related to the" Agreements and, therefore, to be decided "in accordance with" the forum selection clause (via the dispute resolution clause) in each Agreement. *See John Wyeth*, 119 F.3d at 1076 (finding that a defense based on a

contract triggers forum selection clause governing disputes "arising . . . in relation to" the contract); *Methode Elec., Inc. v. Delphi Auto. Sys. LLC,* 639 F. Supp. 2d 903, 909 (N.D. Ill. 2009) (holding while "the contract may not address explicitly propriety rights to the design of [the patented product], it is still the most recent incarnation of a long-standing relationship that grew out of, and is therefore connected with, the design and manufacture of [the patented products]"); *Aerus LLC v. Pro Team, Inc.*, No. 04-CV-1985, 2005 WL 1131093, at *8 (N.D. Tex. May 9, 2005) (holding that because one defense to patent infringement claim might be based on the license agreement, the patent claim is related to the agreement and, therefore, the forum selection clause applied). Therefore, the Court concludes that Plaintiff's patent infringement claims are related to the Agreements and are governed by the forum selection clauses therein.

### 4. Whether Plaintiff Has Rebutted The Presumptive Reasonability Of the Forum Selection Clause

The fourth and final inquiry in the *Phillips* analysis is whether the party resisting enforcement of the forum selection clause (here, Plaintiff) has rebutted the presumption of enforceability. To meet this burden, Plaintiff must "clearly show that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 384 (quoting *Bremen*, 407 U.S. at 15). In language applicable to this case, the Supreme Court has explained the presumptive validity of agreements negotiated at arms length between businesses seeking to identify a neutral forum for resolution of disputes:

> Not surprisingly, foreign businessmen prefer, as do we, to have disputes resolved in their own courts, but if that choice is not available, then in a neutral forum with expertise in the subject matter. Plainly, the courts of England meet the standards of

> neutrality and long experience in admiralty litigation. The choice
> of that forum was made in an arm's-length negotiation by
> experienced and sophisticated businessmen, and absent some
> compelling and countervailing reason it should be honored by the
> parties and enforced by the courts.

*Bremen*, 407 U.S. at 11-12; *see also Phillips*, 494 F.3d at 386 (noting that "contracting parties

may intend to agree in advance on a forum where any and all of their disputes must be brought to

eliminate surprise of having to litigate in a hostile forum").

Here, Plaintiff is based in the United States; at least one Defendant is based in Denmark.

It should not be surprising that neither company wanted to litigate on the other's home turf. *Cf.*

Jonah Lehrer, *No Place Like Home*, Bos. Globe, May 25, 2008, *available at*

http://www.boston.com/bostonglobe/ideas/articles/2008/05/25/no_place_like_home/ (last visited

Sept. 26, 2012) (noting that "[h]ome teams in the NBA have a 62 percent chance of winning,

while those in Major League Baseball and the National Hockey League have a 53 percent chance

of winning," while home teams in the National Football League win "between 54 and 64

percent" of their games). So, the Parties selected England and Wales as the neutral jurisdiction.

Notwithstanding its express consent to litigate disputes in this neutral forum, Plaintiff now

argues that having to litigate its claims in England or Wales would be unreasonable.[7] First,

Plaintiff claims that the courts in England and Wales might be unable or unwilling to "apply

another jurisdiction's patent law," and that is the reason the Agreements "carved-out

---

[7] Plaintiff makes no claim that there was fraud by Martin in negotiating the forum
selection provisions in the Agreements, or that Martin otherwise overreached in the formation of
the Agreements. Nor can Plaintiff make a claim of inconvenience to itself, having freely
participated in the negotiations leading to the Agreements. *See Bremen*, 407 U.S. at 16 ("Of
course, where it can be said with reasonable assurance that at the time they entered the contract,
the parties to a freely negotiated private international commercial agreement contemplated the
claimed inconvenience, it is difficult to see why any such claim of inconvenience should be
heard to render the forum clause unenforceable.").

enforcement actions from the forum-selection clause in the first instance." (Pl's Mem. 15.) Yet, Plaintiff has provided no legal authority, from any court in the United States, England, or Wales, for its assertion that English or Welsh courts would refuse to honor the provision in the Agreements that American law would govern the *scope* of the patents in suit. Indeed, the Federal Circuit has enforced a forum selection clause that permitted an Italian court to interpret a United States patent. *See Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 806 F.2d 1045 (Fed. Cir. 1986).[8] And, the Court is aware of some authority suggesting that the courts of England are willing to apply United States patent law. *See, e.g., Celltech Chriroscience Ltd v. MedImmune Inc.*, [2003] EWCA (Civ) 1008, 2003 WL 21554593 (Eng.) (deciding whether doctrine of equivalents applied to patent in a license agreement and noting that "[i]t is not disputed that the issue is to be determined in accordance with the Patent Law of the United States"); Eric Chan, *Asserting Foreign Patent Claims in U.S. Federal Courts: What's Left after Voda v. Cordis?*, 18 Alb. L.J. Sci. & Tech. 1, 40 (2008) (noting that courts in Japan and England have decided patent issues under United States law).[9]

Second, Plaintiff argues that the dispute over Defendants' alleged failure to meet its royalty obligations under the License Agreement, which allegedly resulted in Plaintiff's decision

---

[8] There also is ample authority that American courts consider infringement claims involving foreign patents when the parties have adopted a forum selection clause. *See, e.g., Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 589 F. Supp. 2d 84, 97 (D. Me. 2008) (noting that while the district court would "have to examine the scope of the Chinese patent to determine what, if any royalties are due, that is a collateral consequence of the License Agreement"); *Baker-Bauman v. Walker*, No. 06-CV-17, 2007 WL 1026436 (S.D. Ohio Mar. 29, 2007) (holding that it was proper for court to consider infringement claims based on patents in Australia and China).

[9] At oral argument, Plaintiff's counsel suggested, without citing any authority, that there might be a statute of limitations issue with prosecuting this action in England and Wales. Given that Plaintiff has not substantiated this assertion, the Court is unpersuaded.

to terminate the License Agreement, would be determined the same way that infringement would be decided here – with reference to whether Defendants' products are covered by Plaintiff's patents. According to Plaintiff, litigating the question of termination in England or Wales and then litigating the supposedly duplicative question of infringement here would be a waste of judicial resources. This is a curious position in light of Plaintiff's efforts to argue that this patent action somehow is not related to the Agreements, and therefore not governed by the forum selection clause in each of those Agreements. In any event, the supposed waste of judicial resources was something that was entirely foreseeable to Plaintiff when it negotiated the Agreements, and so it is unpersuasive of Plaintiff to champion judicial efficiency as a means to re-draft the forum selection clause. Moreover, if, as Plaintiff suggests, the issue of infringement is duplicative of the issue of unpaid royalties, then presumably a court's decision in one jurisdiction would be dispositive, on collateral estoppel grounds, in the other jurisdiction. *See Scheiner v. Wallace*, 832 F. Supp. 687, 694-95 (S.D.N.Y. 1993) (granting summary judgment in a contract case "given [the] collateral estoppel effect of the English Action"); *Fairchild, Arabatzis & Smith, Inc. v. Promecto (Produce & Metals) Co.*, 470 F. Supp. 610, 616 (S.D.N.Y. 1979) (holding that English and New York courts apply similar notions of collateral estoppel).

Therefore, the Court concludes that Plaintiff has not established that enforcement of the forum selection provision in each Agreement would be unreasonable.

C. Whether this Opinion Should be Sealed

Pursuant to their Joint Protective Order, the Parties have filed their memoranda under seal. However, "[i]n addition to [a] common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120

(2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The qualified First Amendment right attaches to judicial opinions such as this one. *See id.* at 121 ("[A]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." (internal quotation marks omitted)). Where the qualified right exists, "'[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). However, "[b]road and general findings by the trial court . . . are not sufficient to justify" sealing documents. *Id.* (internal quotation marks omitted). In general, privacy interests of the Parties can provide a sufficient "higher value" in appropriate circumstances. *See id.* (stating that the court should balance the public's interest against the privacy interests of concerned parties). In this case, however, the Court has divulged no trade secret or confidential information in this Opinion. Indeed, there is nothing in this Opinion that would not be routinely discussed in a motion to dismiss. Finally, the Court notes that at oral argument the Parties indicated they would not object to the public filing of this opinion so long as no proprietary information was revealed. Therefore, the Opinion shall be publicly filed within 14 days unless the Parties provide specific redactions that they believe should be made.

## III. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted. The Clerk of

the Court is respectfully requested to close this case.

SO ORDERED.

Dated: September 27, 2012
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List (via ECF)

James David Veltrop, Esq.
Jeremy Chad Lowe, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103
jdv@avhlaw.com
jcl@avhlaw.com

James Patrick Doyle, Esq.
Axinn, Veltrop & Harkrider LLP
114 West 47th Street
New York, NY 10036
jpd@avhlaw.com

Douglas R. Nemec, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Sq.
New York, NY 10036
dnemec@skadden.com